This case is 411-0356, the Department of Central Management Services v. The Illinois Labor Relations Board. For the appellant, Mr. Weiner, for the appellee, Mr. Schmidt. Mr. Weiner, you may proceed. Thank you, Your Honor. May it please the Court, first I would like to express my sympathy for the passing of Judge McConnell. Thank you. We appreciate that. Great justice. Nick Condellis is one of the legal counsel in the ISP's legal office, or what we call the Department. All these attorneys, according to the testimony, are used by Acting Chief Legal Counsel Hostany interchangeably to handle matters of C.C. Fitz, and he assigns work to the PSA staff attorneys based upon their availability and their backgrounds and expertise. Mr. Condellis' expertise based upon his previous prosecutorial experience in Cook County, and because of that, his primary, but certainly not exclusive, function is to handle matters before the State Police Merit Board. If you look at the job descriptions, what he, the scope of his other duties are, they're quite extensive. In addition, he along with Counsel, if you could help me there, what specific work did he perform that makes him a managerial and or confidential employee? Well, first of all, there's a specific example of the EEOC matter that he was handling. When it comes to EEOC complaints, when it comes to Human Rights Commission matters, these attorneys, these attorneys in the legal department, actually represent the agency, the Illinois State Police, before those bodies. And again, those complaints are filed by other employees who are also union employees, and that, in my opinion... But those other employees are from different unions, correct? Right, but they're union employees of the state that are filing charges against the state. Well, tie that up for me. It's a different union, but you're saying that doesn't make any difference. Even though it's a different union, there still presents a conflict, as I understand your argument. That's... Okay, why? That's what I'm trying to... Because I think that a prosecutor, in this case of disciplinary proceedings, or a prosecutor defending an EEOC charge, if it's by a fellow employee who is represented by a union, and he's a member of the union, I think that creates an inherent divided loyalties and conflict of interest. It's one union... So you're saying that a union is a union is a union is a union, right? Well, I think that's not a bad analogy, actually. They're involved in disciplining people, and they're also union people that are involved in disciplining co-employees. They give advice. The evidence is undisputed in this case that Mr. Condellis gives advice, not just to the... He gives advice in terms of discipline. He gives advice to the Disciplinary Review Board, which is different than the Illinois State Police Merit Board, where they have the evidentiary hearings. He's involved in collaborating with the Attorney General's office, in effect being almost co-counsel on all these disciplinary cases before the Illinois State Police Merit Board. But on his own, he provides legal review of disciplinary actions before the Disciplinary Review Board. These are all part of his job descriptions, these are all part of his performance evaluations, and I think if he's disciplining union people, he's a union member, I think you have an inherent conflict of interest. Did the evidence show Hostany could assign Condellis to regularly work with the Labor Relations Office? Yes, in fact... I'm sorry, you... No, go ahead. No, I'm just trying to clarify your question. Mike said it written down, so I'll just read it to you again. Did the evidence show Hostany could assign Condellis to regularly work with the Labor Relations Office? I assume he could, but that's not what happened with Condellis. I mean, he was primarily involved in disciplinary proceedings before the Illinois State Police Merit Board, as well as... Well, should we be focusing on what Condellis did or what he possibly could have done based upon the job responsibilities? Right, I think it's the authority that he has to do these actions, but he really did... Going back to your previous question, Hostany testified that he assigns people interchangeably, that he cross-trains them. So, what I'm saying to Your Honor is that, you know... But because of Condellis' previous prosecutorial experience, he assigned them to, in essence, prosecute the... It's for civilly prosecute, I would call it, for disciplinary purposes, the employees of the Illinois State Police. There's a lot of... We get into a discussion sometimes here as to what the authority of people have and what they actually have experienced. In this case, they're coterminous, I say, because if you look at his job position description, which I have on page 29, there's pertinent portions of it in my brief. It provides that he's to provide... He's an assistant to the Chief Legal Counsel, which segues into, of course, our confidential argument, because he assists Hostany, and Hostany is undisputedly a person who formulates, determines, and effectuates management policy. So, Hostany is excluded, correct? Yes. Jarvis is excluded, correct? Right. And so, your argument would be, since... Is it Condellis, am I pronouncing that correctly? Yeah, I have the same trouble. Okay. I think you're saying, logically, if those two are excluded, so should he be excluded. That is exactly the case. I think that, basically, the evidence was ignored. I mean, there's not a reference... He was handling the EEOC matter, Exhibit 41, R305, T73, Transcript 73. He was handling an EEOC matter. I mean, there's no reference to him doing that. Evidence... We get a lot of EEO cases. Again, he's not collaborating with the Attorney General. They're actually representing the agency against its complaining employees. But if you look down at what his job description provides, and again, we had an item the other day, how these people should be excluded or included. And, you know, the trouble with what the board is doing is, it goes back a long way, that they're saying, for each individual, you've got to determine whether they do things or not do things. I say, no, it's the authority, and number two, I say that it's the job description that really defines someone's employment. Whether they actually perform one item or have performed one item on a job description or not, that's the extent of their authority under the law. Anyway, then he acts as a liaison with the Attorney General's Office on civil cases involving employee discipline, constitutional rights, discrimination, and other litigation on a statewide basis. He advises both orally and by written position papers to director and division heads concerning legal aspects of operational, sworn, and code issues. Participates in confidential high-level management discussions related to department operations. He even drafts and reviews, and this is part of the job description, although there's no evidence that he has done this. One of his functions in his job description is to draft and review labor agreements, both coders and labor agreements. The performance evaluations, he actually, it's listed there on page 29 and 30 about serving as a liaison to the Attorney General's Office involving civil cases involving employees' constitutional rights, discrimination, and other litigation. He also handles employees' disciplinary matters. What is there a case that directly says the job description controls rather than the historical conduct of the employee? Because the historical conduct of this employee, while you might contest it, could be argued to be, no, he doesn't do these things. Let's assume for the moment that's the case. It's still your position that an 8L who's a lawyer and is in the state police situation that this fellow is in, as a public service administrator, you have to treat him as a managerial confidential employee because of his job description. So what case says that? A National Union of Hospital and Healthcare Employees, it's an AFSCME case, Your Honor, and it's at 295 Illinois Ave. 3rd at 1012-1021-22 1st District, 1998. Wherein the court basically is a summary held, a position description provides reliable evidence of an employee's authority within a specific position and is an appropriate piece of evidence when determining whether the individual should be excluded from the unit. And then see also, I quote you, Riley v. Blagojevich, which is a Seventh Circuit case, dealing with these very issues of job descriptions versus individual, and the Seventh Circuit... But does it say, it doesn't say those control, it just says those are good evidence? Is that what I understood it to say? In Riley v. Blagojevich, it's the Seventh Circuit held that the job description is controlled. And they further stated, quote, the fact that particular incumbents may have been mice, who, this is Posner, who forebore to exercise any of those duties is irrelevant, close quote, irrelevant to the determination of what authority... So you could have a supervisor or a witness come in and testify and say, look, this guy's job description is such that we could give him these duties. We don't because he's a dud. He's adequate at what we have him do. It's justified to pay him the salary. We're happy with his work, but we're not going to delegate him any of these duties that are in his job description for whatever reason. That would not make any difference under the Seventh Circuit view. It's like, you know, if someone, for example, let's assume there was one indicia involved in terms of becoming a supervisor, let's say discipline. Someone doesn't discipline anybody because they're either new to the job or because they're effective in working with, collaborating... But they have the power to discipline. But they'll be included in the unit because they didn't have the indicia based upon actual experience of actually having done it. Even if they're... so that's one of the problems you have, you know, when you're dealing with, you know... So part of your argument would be that, as I understand it, is the board, in its order, focused on what he specifically did inappropriately because what they should have been focusing on is what could he do under this job description. Well, actually, I'm saying that there was more than sufficient evidence as to what he did to qualify him as both a confidential employee and a managerial employee under the traditional test. More than sufficient evidence... in fact, that evidence... the problem was that evidence was totally ignored. I might say that the ALJ's opinion came down on October 21st, 2010, before this court's opinion in the ICC case, landmark opinion in the ICC case, defining managerial... But phrasing it this way, there's enough evidence, but even if there wasn't, the job description ought to control it. Correct, but in this case there was, I mean, overwhelming evidence, undisputed evidence, undisputed. And also advising Hostany, who was held to be a person that formulated determined and effective management policies. Also, he had authorized access to information relating to the effectuation or review of the employer's collective bargaining policies, which includes, by the way, quote, information relating to matters dealing with contract administration. And that language is just ignored. It's left out. Here, this employee and all the people, all the other ones in the legal office, have access to information relating to matters dealing with contract administration. When they're advising disciplinary actions, one of the things they have to do is consult with or review the collective bargaining agreement, the policies of the agency, state laws, but they're dealing with contract administration. While he is not one that customarily or maybe has not yet been given the opportunity to go into a grievance procedure and acknowledge that, the simple point of it is that he's involved in legal counsel involving discipline, which necessarily involves construction of an application, review and application of a collective bargaining agreement. The fact that he's been utilized before the review board is a choice of higher management, but it's certainly within his job functions and responsibilities. We would request that this court reverse the decision based upon our conversation or this argument. And I was getting to the point that the ALJ's opinion, which was adopted by the ILRB, even though it was after this court's opinion, actually seek it, if your honors felt that it shouldn't be reversed outright, we would request that it be reversed and remanded to the ILRB to review its decision to conform with this court's decision in the ICC. Any other further questions? Seeing none, you will have rebuttal. Mr. Schmidt, please proceed. Thank you very much, Your Honor. I just wanted to start by echoing Mr. Weiner's very thoughtful words about Justice McCullough and to express the sympathies of the board and the Attorney General's office. Okay. Thank you for that. Your Honors, I wanted to start with Mr. Weiner's point on job descriptions. I believe the first case he cited indicated that a job description is a relevant piece of evidence that should be considered. And the board certainly has no quarrel with that. But I think if the job description becomes dispositive of the issue of whether somebody is a managerial, a supervisory, or a confidential employee, I think it just becomes far too easy for management to write job descriptions that are going to take everybody out of collective bargaining. So that's why I think a job description is a relevant piece of evidence. But it's also important to examine what the employees actually do and also what they are reasonably expected to do in the future. That's what the board did with regard to Mr. Jarvis. What the board did, the board saw the evidence that he had one time engaged in an interest arbitration in which he had worked with confidential matters related to collective bargaining. The ALJ felt that wasn't quite enough to make him a confidential employee. But the board looked at that evidence and the board also concluded that it was likely in the future that he was going to continue doing that due to budgetary constraints that the state police face. The state police was not going to be able to rely on outside counsel as much in labor relations matters. But in contrast, Mr. Condellis had never handled labor relations matters like an interest arbitration and he wasn't even trained to handle them. So the board felt that the evidence was different as to Mr. Condellis and concluded that he would not be disqualified as a confidential employee as Mr. Jarvis had been. Does that restrict the employer though from using him in those roles in the future if he's in a collective bargaining? Well, I think as a practical matter, I think the evidence in this record shows that the state police were reluctant. They would not use somebody in a labor relations matter. But I don't think that's much of a restriction in this instance. Mr. Condellis had worked there since 2008 and had never been asked to work in a labor relations matter. But let's say Jarvis leaves and now they don't have the funds to hire a replacement for Jarvis. So Condellis has to pick up Jarvis's work. How can that happen if he's in a bargaining unit? That well might not be able to happen. The possibility would exist that the state police could file a new petition to remove him from the bargaining unit if it felt that it was necessary to use him or to use some other attorney that was a part of the unit. So that would be a possibility if the state police wished to do that. But there's no indication in the record that something like that was likely to happen. If something like that was likely to take place, remember Hostany also was there to cover most labor relations matters. But if there was a likelihood of something like that happening, the board would have listened to evidence about that. But the CMS has the burden of showing that one of these exclusions applies and they didn't present any evidence that Condellis in the future was going to be placed in the position of handling labor relations matters. We've had a lot of these cases over the last at least several years in influx. Do you detect any trend in any court, including the Seventh Circuit, to go in the direction that Mr. Weiner is suggesting? That we have a bright line and we look at job description? Or do you think we are always fact specific? So you've got two people perhaps making the same wage, perhaps designated exactly the same. And they have the same background, in this instance a law degree and a certain amount of experience. We treat them differently because of what is sitting on their desk? I don't really think that there's a trend to rely exclusively on the job description. Well, is there a trend the opposite way? That these are always fact specific? Well, I think they're fact specific, but the inquiry can go beyond what the employee does into what there is a reasonable likelihood the employee will do. That they might do? It's recognized as a third test in terms of confidential employee. The reasonable expectation test is what it's called. And if the employer presents evidence that there is a reasonable expectation that this employee is going to handle confidential matters in the future, then the board could conclude that this would be a confidential employee. And there is a case that I don't think I cited in my brief, but I might consider citing it as additional authority that sets out the reasonable expectation test. It was an educational labor relations board matter. Would that also, by analogy, would that apply to managerial as well? I mean, if the employer came in and said, Mr. Condellis is being groomed to do more, and to have more supervisory authority, and as a result of that he will also have to be privy to confidential information, but that's going to be for a while. We want to continue to have him work on these other matters. And then going forward, we think both of those things will happen. I mean, I think there's a possibility of that. I think it's a little harder to conceive of it in terms of the managerial test. But I think the board would be, I think with the managerial test, the board would be receptive to the notion that, well, this is part of the actual powers that the person has. The person actually has the authority to do this, even if they don't do it very often. But I still think it's important to look at what the person actually does, and not just a piece of paper saying the person can do it. Because, again, you're putting so much power in the hands of management just to write job descriptions that are going to take people outside collective bargaining. And I think that's too great a temptation to place in management hands. One point I would make about the Seventh Circuit case that's involved, the Seventh Circuit, of course, doesn't, and it doesn't construe the Illinois Public Labor Relations Act. So that case, of course, that decision wouldn't be controlling. I think with regards to the managerial employee issue, I think the evidence here was practically nonexistent, that he has managerial duties. And even if it's true he's involved in discipline, but being involved in discipline doesn't make him a manager. And his authority to pursue disciplinary matters is very much constrained. He does draft disciplinary charges before the State Police Merit Board, but he can't draft one and file one without Mr. Hastiny's approval. He can't settle a case without the approval of Mr. Hastiny and a couple of other higher-ups, the Chief of Staff and the First Deputy Director. He doesn't even sit in on the meetings where Mr. Hastiny and then those other two individuals discuss how to respond to the settlement office offers. So his authority is really constrained. We cited the 2009 Central Management Services case in our brief, which involved six lawyers who conducted administrative litigation for the Department of Human Services, and they were held non-managerial. And they had more authority than Mr. Condellis does here with regard to conducting litigation. Here he files the complaint, and then he helps the Assistant Attorney General who actually does conduct the litigation. In the other case, the Department of Human Services attorneys were actually conducting the litigation. I also, I think... But as co-counsel, he's going to be privy to confidential information. Well, he's... Okay, that's taking us to the confidential and not the managerial. I think co-counsel is technically not an accurate term, but he's assistant counsel. And he could be privy to some disciplinary... to the information that the Assistant Attorney General would be, certainly. But I don't think information... The board... There was no evidence here that the type of information that Mr. Condellis would be privy to. And there's not that much of a record on this, unfortunately. But there's no information that... There really wasn't evidence that the type of information he'd be privy to would be something that his union would really necessarily be interested in or that might give them some advantage in the collective bargaining process. And I think what you're driving at in the confidential employee exception, it's intended to avoid situations where there's going to be divided loyalties because the employee has loyalty to management but might be tempted to release confidential information that the union might be interested in. Mr. Condellis had access to investigative reports. The ALJ mentions that in her recommended decision. But there really wasn't evidence as to what those reports contained or that it would be something that the union would be interested in, especially where we're talking about a different union. He always prosecutes or he's involved with discipline of employees who are in different unions, the Fraternal Order of Police. And in rare instances, the Teamsters. So the board concluded that the CMS's showing wasn't sufficient to show that Mr. Condellis would be a confidential employee. And again, I'll emphasize, the reason Mr. Jarvis was found to be confidential was that he specifically handled labor relations matters. At least one labor relations matter. A matter that related to collective bargaining. It was an interest arbitration and I believe it was over salary. And he became privy to information that a union would be interested in, in the collective bargaining process. Information that touched on the collective bargaining strategies. There was nothing of the kind going on with Condellis. Again, he had never handled a labor relations matter and there wasn't really evidence showing that it was likely that he would in the future. And that's why the board made a distinction between the two. Nothing to show it was likely, but how about that it was possible? Wouldn't that be enough? No, I don't think that would be enough. I think, again, the focus should be on reasonable expectation. Have they shown some reasonable likelihood? Not just a mere possibility. Hosny could just say, okay, Jarvis, what you're doing now, I'm going to have Condellis do, and vice versa. That's all it would take, right? And then we would have a problem here. I think if he had had a practice of doing that. But he clearly had within his authority to do that. It is within his authority, but he testified. He did not provide any testimony. I mean, if the state police had called him and he said, well, look, I'm going to have my staff, I'm going to have Mr. Condellis work on labor relations matters from now on, or I'm going to change our system. The assessment basically was they kind of had their own niches, but they're also interchangeable. And that actually was his idea of how to run his responsibilities. Niches, but interchangeable. But as things come up that need to be done. But what the ALJ and the board found, and the evidence supports this, is in reality it was pretty much expertise. There would be a very occasional matter assigned outside the area of expertise. I believe the evidence was one time Condellis handled an EEO matter, and he never handled labor relations matters. So the evidence was that while theoretically Haspany could, he very rarely did assign outside the areas of expertise. And that's why the board concluded the way it did. And let's just. I think I've pretty much covered everything that I intended to say, Your Honors. And if there are no further questions, I'll just sit down and ask that the board be affirmed and thank the board. Thank you, Counsel. Rebuttal, please. First of all, regarding the third test, the reasonable expectation test, that test is only to be applied where no collective bargaining agreement was previously in place. It's a very restricted test. It's not as characterized by Consul. Second of all, EEOC, IDHR, HRC matters, they're all labor relations related. And he gave advice as well, which is undisputed, both in his performance evaluations and in his job description on disciplinary matters, including to the Merit Review Board. The litigation that he refers to in your previous case involving the Department of Human Services, those lawyers were defending cases against outside vendors. It had nothing to do with defending cases by co-employees or prosecuting co-employees, would be co-union employees, albeit not the same union. That involves a direct conflict of interest. That involves divided loyalties. The Seventh Circuit actually discusses the issue of what was raised as an argument by Consul, and that is, what if someone was fabricating a job description to manipulate someone, keep them out of the bargaining unit, not correctly. And they go into a long discussion about, obviously, that they condition their reliance upon job description where there's no showing of manipulation or, you know, whatever, skullduggery of that nature. I don't have these people in front of me. It was interesting discussion if your honors seem to feel that might be appropriate. In short, you know, while Jarvis had his interest arbitration, here Condelas has his EEO, he has his merit board, he has his state disciplinary board, he has his constant advice in terms of discrimination issues. Those are labor relations issues. Discrimination issues, employment issues, there's a whole litany of them both in his job performance review and in his job description, which I respectfully, therefore I respectfully request that the decision be reversed. We're reversing it. Thanks to both of you. The case is submitted. The court stands in recess for a few minutes.